UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DR. OCHEOWELLE OKEKE** | * | NO. 2:20-CV-00450 |
| *Plaintiff* | * | |
| | * | JUDGE: SUSIE MORGAN |
| **VERSUS** | * | |
| | * | |
| **ADMINISTRATORS OF THE** | * | |
| **TULANE EDUCATIONAL FUND** | * | MAG. JUDGE: |
| **AND DR. JEFFREY WIESE** | * | KAREN WELLS ROBY |
| *Defendants* | * | |

## AMENDED COMPLAINT

**NOW INTO COURT,** through the undersigned counsel comes the Plaintiff, Dr. Ocheowelle Okeke, who respectfully amends her Complaint pursuant to the Court's Order [R. Doc. 25] as follows:

### JURISDICTION AND PARTIES

1. This suit is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e, *et seq*., and 42 U.S.C. §1981.

2. This court has subject matter jurisdiction pursuant to 28 USC §1331 as to Plaintiff's claims arising under 42 USC §2000e, *et seq*., and 42 U.S.C. §1981.

3. Plaintiff, Dr. Ocheowelle Okeke, ("Dr. Okeke") is a citizen of the United States and a resident of the state of Missouri.

4. Defendant, the Administrators of the Tulane Educational Fund, doing business as Tulane University School of Medicine ("Tulane"), was at all times relevant hereto doing business in the City of New Orleans and can be served through its agent for service of process.

5. Defendant, Dr. Jeffrey Wiese ("Dr. Wiese"), is a citizen of the United States and a resident of the State of Louisiana.

6. Tulane meets all of the requirements for employer status under Title VII.

7. Dr. Okeke meets all of the requirements to have been an employee of Tulane within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 USC §2000e, *et seq.*

8. The events giving rise to this litigation occurred in New Orleans, Louisiana, in the Eastern District of Louisiana. Accordingly, venue lies in the United States District Court for the Eastern District of Louisiana under 28 USC §1391(b).

9. Dr. Okeke has fully complied with all prerequisites to invoke the jurisdiction of this Court under Title VII, as she received her EEOC notice of right to sue letter on November 11, 2019.

## STATEMENT OF FACTS

10. Dr. Okeke repeats and realleges paragraphs 1-9 above.

11. Dr. Okeke is a Black female and an Internal Medicine and Pediatric physician.

12. On about July 1, 2014, Dr. Okeke commenced her employment as a resident in Tulane's combined Internal Medicine and Pediatric residency program ("Med-Peds").

13. Dr. Okeke completed her Med-Peds residency on June 30, 2018.

14. The Med-Peds program is a four (4) year program accredited by the Accreditation Council for Graduate Medical Education ("ACGME"). Residents alternate every four (4) months between the Internal Medicine and Pediatric departments throughout their four (4) years in residency to complete twenty-four (24) months in totality of Internal Medicine and twenty

four (24) months of Pediatric. After completion of their residency, residents are eligible for two (2) Board certifications: Internal Medicine and Pediatrics.

15. Dr. Okeke's graduating Meds-Peds class of 2018 consisted of six (6) residents: 4 black residents, 1 Asian resident, and 1 Hispanic resident.

16. Tulane's Internal Medicine residency is a three (3) year program.

17. The Internal Medicine graduating class of 2018 consisted of fifty-three (53) residents: forty (40) White, one (1) Black, and twelve (12) unknown minorities.

18. Tulane's Pediatric residency is also a three (3) year program.

19. The Pediatrics graduating class of 2018 consisted of eight (8) residents: four (4) White, and four (4) unknown minorities.

20. ACGME provides the educational rubrics for all residency programs.

21. A rotation consists of about two (2) to four (4) weeks of medical service provided by a resident in one particular area of service in a hospital or clinic. According to the ACGME guidelines, residents should complete one (1) month or about four (4) weeks of an Emergency Department rotation.

22. When residents are assigned to elective or subspecialty rotations, that time is typically used to study for that particular area of board certification examinations.

23. ACGME guidelines further provide that the Emergency Department rotation should be completed during the first or second year of residency because of important knowledge and skills which should be obtained during the first and second years of residency.

24. The Meds-Peds residency program is supervised by Program Director Dr. Princess Dennar, a Black female physician.

25. The Tulane Internal Medicine residency program is supervised by Program Director Dr. Wiese. Dr. Wiese also served as Senior Associate Dean of Graduate Medical Education and as the Designated Institutional Official ("DIO"), who at all times relevant hereto, oversaw all Graduate Medical Education activities.

26. At all times relevant hereto, Dr. Okeke was qualified to perform, and did satisfactorily perform, the functions of the position of resident in the Meds-Peds program. She took and passed the United States Medical Licensing Examination Steps 1, 2 CK, and Step 2 CS board examinations. Dr. Okeke also applied and was matched at Tulane through the National Residency Matching Program, an electronic resident application system. During her residency she received many outstanding evaluations and recommendations from medical students, peer residents, and faculty.

27. In or around July 2014, Dr Wiese and /or other agents or employees of Tulane commenced a campaign of gender and race-based discrimination against Dr. Okeke.

28. The end of the academic year, residents in their second, third, and fourth years in the Pediatric and the internal medicine residency programs meet and prepare a template for their proposed upcoming schedules for the Pediatric part and the Internal Medicine part.

29. After the schedule template is prepared, the Chiefs and Program Director for the Pediatric Program send the proposed pediatric schedule to the Med-Peds Program Director to approve and/or amend their schedule to meet the ACGME requirements.

30. However, at all times relevant hereto, the Internal Medicine Program Chiefs and Dr. Wiese refused to send the proposed Internal Medicine schedule to Med-Peds Program Director Dr. Dennar to approve and/or amend the internal medicine portion of the schedule.

31. Frequently when the schedule was finally created and posted, Dr. Dennar would meet with Dr. Wiese to amend the residents' schedules pursuant to the ACGME requirements. However Dr. Wiese refused to make these changes.

32. On about May 4, 2017, Dr. Okeke voiced her concerns to Dr. Dennar about not having sufficient Emergency Department time.

33. Tulane and Dr. Wiese failed and refused to resolve the rotation and elective scheduling issues presented by Dr. Okeke and the other minority female residents.

34. Instead, on about May 8, 2017, Dr. Wiese intimidated her and other residents when he stormed into a group learning session and stated that more of the residents needed to be "team-players", that the ACGME "requirements" for the Emergency Department rotations for Dr. Okeke and other Black female residents did not matter to him, and that "...nobody else matters."

35. During this meeting, Dr. Wiese refused to further discuss these issues, dared the residents to contact ACGME, and stated that he would be okay with getting "a slap on the wrist."

36. Dr. Dennar met with Dr. Wiese after the May 8, 2017 incident and Dr. Wiese's refusal to allow Dr. Okeke and other minority residents to complete the required four (4) weeks of an Emergency Department rotation.  Dr. Wiese responded that "they won't need this in the future. I think it's a useless rotation.  You can do what I do and just forge their requirements."

37. On about April 5, 2018, Dr. Okeke and six (6) other Black residents in the Med-Peds program submitted a written complaint to the Office of Institutional Equity ("OIE") alleging that Dr. Wiese and/or Tulane discriminated against them on the basis of their race

(Black) and gender (female) when they created a work environment that impeded their ability to complete their core requirements in the Med-Peds curriculum.

38. OIE is the office primarily responsible for investigating claims of discrimination and retaliation at Tulane. It is well known that OIE has a pattern of closing claims made against high level personnel in the school of medicine under the premise of "insufficient evidence."

39. On April 6, 2018, several other Black female residents filed a collective complaint to ACGME asserting various discriminatory acts by Dr. Wiese and Tulane. They requested ACGME's intervention to ensure an equitable education experience at Tulane.

40. Dr. Okeke alleges that Dr. Wiese and/or Tulane discriminated against her on the basis of her race (Black) and her gender (female) when they:

   a. forced a more difficult and intensive rotation schedule on her and other Black female residents such as by giving Dr. Okeke more inpatient wards per month in comparison with White and/or male residents;

   b. gave her more assignments to the Gemini service (wherein she had no full days off) in contrast to White male residents who were not required to complete as much time in the Gemini service, who thus had more time in elective/subspecialty rotations, more educational exposure, and also more time to study for board certifications as a result;

   c. refused to allow Dr. Okeke and other Black female residents to complete the required ACGME rotations needed for graduation.

    d. prohibited Dr. Okeke from completing her required four (4) weeks of Emergency Medicine rotation which was required by ACGME for graduation, and only permitted her to complete two (2) weeks of the Emergency Medicine rotation;

    e. forced Dr. Okeke to use some of her paid vacation time while enrolled in electives at outside institution/(s), whereas Defendants did not require white male residents to use their vacation time for such electives, and paid white male residents for their entire enrollment in electives at outside institutions;

    f. forced Dr. Okeke and other Med-Peds residents several times to forego their elective and/or subspecialty time in order to provide jeopardy[1] coverage to other residents, despite not being scheduled to do so. When Dr. Okeke refused to do so, she was chastised as not being a "team-player."[2] However, the predominantly white residents in the Internal Medicine program were not required to do this.

    g. remarked that Dr. Okeke and other Black female residents were not "team players" if they ever voiced complaints about their schedules or discriminatory treatments by Dr. Wiese and/or agents or employees of Tulane.

41. At least six (6) other Black female residents who were employed at Tulane during approximately the same time as Dr. Okeke suffered similar race and gender-based discrimination by Dr. Wiese and/or Tulane.

42. OIE responded to the complaints of Dr. Okeke and other Black female residents by hiring a purported independent investigator, Ms. Ellen Rains, an attorney employed by Ogletree,

---

[1] Jeopardy is a system used during residency in which residents cover for fellow residents during unforeseen emergency situations. Med-Peds residents frequently were called away from elective rotations to cover for residents who were supposed to be in jeopardy.

[2] Enrollment in elective and/or subspecialty rotations is significant as they expose residents to a wider breadth of medical practice and provide residents the opportunity to explore various career paths, to obtain recommendations for fellowships, and to explore the potential for publishing medical articles.

Deakins, Nash, Smoak, & Stewart, P.C. However, the Ogletree Deakins law firm has previously represented the Tulane University School of Medicine in an age discrimination suit and was thus not an independent investigator.

43. Upon information and belief, many of Dr. Okeke's key witnesses were not contacted as part of the "independent" investigation.

44. After investigating the claim, the OIE, through Ms. Rains, issued a final report on October 15, 2018 which purportedly found no race or gender-based discrimination by Tulane or Dr. Wiese because of insufficient evidence.

45. Yet, in November of 2018, he ACGME placed Tulane and its Internal Medicine program on "continued accreditation with warning status" following several citations. ACGME concluded that it could not confirm not rule out the possibility, that the differences in the Med-Peds scheduled versus the Internal Medicine and Pediatrics schedules were caused by and/or related to race and/or gender-based discriination.

46. As a result of the above cited race and gender-based discrimination, Dr. Okeke attempted to have Dr. Princess Dennar, the Director of the Med-Peds program, intervene and oppose Dr. Wiese and Tulane's discrimination against herself and other minority Med-Peds residents.

47. However, because Dr. Dennar is herself a Black female who was also subjected to discrimination by Tulane and/or Dr. Wiese, Dr. Okeke's request was met with a lackluster response.

48. The Internal Medicine program leadership has ignored Dr. Okeke's repeated requests to address Dr. Wiese's gender and race-based discrimination against her and other Black female residents.

49. The above desribed acts of gender and race-based discrimination against Dr Okeke were sufficiently pervasive and/or severe enough to consititute a hostile work environment.

50. Non-minority residents were not subjected to this racial and gender discrimination. Dr. Wiese and Tulane University have refused to address the above cited race and gender-based discrimination.

51. Dr. Okeke asserts that the above cited practices reflect long-standing institutional racism and discrimination by Tulane, resulting in disparities for her and other minorities in obtaining educational experiences and training as a physician.

52. Due to Dr. Okeke's lack of exposure to electives/subspecialty areas, she was forced to delay sitting for her Internal Medicine Boards for one (1) year and did not have sufficient time to focus on patients at her new job.

53. As a result of the above cited instances of gender and race based discrimination, Dr. Okeke was denied equal rights and privileges of employment which were afforded to white residents.

**Claim 1:  Gender Discrimination by Tulane in Violation of Title VII (42 U.S.C. §2000e *et seq.*)**

54. Dr. Okeke repeats and realleges paragraphs 1-53 above.

55. Dr. Okeke's gender (female) was a factor that made a difference in Tulane's decision, through its employees, agents, and representatives, to subject her to the wrongful and discriminatory treatment described above, in violation of Title VII.

56. Tulane, through its employees, agents, and representatives, was predisposed to discriminate on the basis of gender and acted in accordance with that predisposition.

57. Tulane, through its employees, agents, and representatives, treated Dr. Okeke differently from similarly situated non-female employees in the terms and conditions of employment, based on unlawful considerations of gender, female.

58. The actions of Tulane, through its employees, agents, and representatives, were intentional, and with reckless indifference to Dr. Okeke's rights and sensibilities.

59. If Dr. Okeke had not been female, she would not have been treated in the manner described herein.

60. As a direct and proximate result of Tulane's wrongful acts and omissions, through its employees, agents, and representatives, Dr. Okeke has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of enjoyment of life.

**Claim 2: Race Discrimination by Tulane in violation of Title VII (42 U.S.C. §2000e *et seq.*)**

61. Plaintiff repeats and realleges paragraphs 1-60 above.

62. Dr. Okeke's race (Black) was a factor that made a difference in Tulane's decision, through its employees, agents, and representatives to subject her to the wrongful and discriminatory treatment described above, in violation of Title VII.

63. Tulane, through its employees, agents, and representatives, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

64. Tulane, through its employees, agents, and representatives, treated Dr. Okeke differently from similarly situated non-Black employees in the terms and conditions of employment, based on unlawful consideration of race, Black.

65. The actions of Tulane, through its employees, agents, and representatives, were intentional and with reckless indifference to Dr. Okeke's rights and sensibilities.

66. If Dr. Okeke had not been Black, she would not have been treated in the manner described.

67. As a direct result and proximate result of Tulane's wrongful acts and omissions, through its employees, agents, and representatives, Dr. Okeke has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of enjoyment of life.

**Claim 3: Hostile Work Environment by Tulane in violation of Title VII (42 U.S.C. §2000e *et seq.*)**

68. Dr. Okeke repeats and realleges paragraphs 1-60 above.

69. Dr. Okeke belongs to a protected class (Black and female).

70. Dr. Okeke was subject to unwelcome harassment as alleged hereinabove.

71. Dr. Okeke's race (Black) and gender (female) were factors that made a difference in Tulane's decision, through its employees, agents, and representatives, to subject her to the wrongful and discriminatory treatment described above.

72. The harassment affected a term, condition, or privilege of employment as alleged hereinabove.

73. Defendant Tulane knew or should have known of the harassment in question and failed to take prompt remedial action.

**Claim 4: Hostile Work Environment by Dr. Wiese in violation of Title VII (42 U.S.C. §1981**

74. Dr. Okeke repeats and realleges paragraphs 1-60 above.

75. Dr. Okeke belongs to a protected class (Black and female).

76. Dr. Okeke was subject to unwelcome harassment as alleged hereinabove.

77. Dr. Okeke's race (Black) and gender (female) were factors that made a difference in Dr. Wiese's decision to subject her to the wrongful and discriminatory treatment described above.

78. The harassment affected a term, condition, or privilege of employment as alleged hereinabove.

79. Defendant Dr. Wiese knew or should have known of the harassment in question and failed to take prompt remedial action.

**Claim 4: Race Discrimination by Dr. Wiese in violation of Title VII (42 U.S.C. §1981**

80. Dr. Okeke repeats and realleges paragraphs 1-60 above.

81. Dr. Okeke belongs to a protected class (Black).

82. Dr. Okeke applied or, and at all time relevant hereto was qualified for the position of resident in Tulane's Med-Peds program.

83. Dr. Okeke suffered an adverse action by being forced to work in a hostile work environment as stated above.

84. Defendant Dr. Jeffrey Wiese treated Dr. Okeke differently from similarly situated non-Black employees in the terms and conditions of employment, based on unlawful consideration of race, Black.

## JURY DEMAND

85. Dr. Okeke demands a trial by jury on all issues triable by a jury.

## DAMAGES

86. Plaintiff repeats and realleges paragraphs 1-60 above.

87. Plaintiff seeks damages for mental anguish and emotional distress, humiliation and embarrassment, loss of enjoyment of life, punitive damages, attorney's fees, and all costs associated with the litigation, with interest from the date of judicial demand.

Respectfully submitted,

**VASQUEZ LAW OFFICE**

_____
Jessica Vasquez (La #27124)
400 Poydras Street, Ste. 900
New Orleans, LA 70130
Tel: 504.571.9582
Fax: 504.684.1449
jvasquez@vasquezlawoffice.com
***Attorney for Dr. Ocheowelle Okeke***